# TABLE OF CONTENTS

SUMMARY OF ARGUMENT…………………………………………………………………….......1

LEGAL STANDARD………………………………………………………………….........3

ARGUMENT……………………………………………………………………………...3

**A.  This Court Should Deny Summary Judgement on Count I (Unlawful Seizure…**......3

    1.  The Physical Encounter Between Mr. Moore and Defendant Officers Occurred After Mr. Moore Was Already Seized Within The Meaning Of The Fourth Amendment………………………………………………………………..........3

    2.  There Was No Probable Cause Mr. Moore Assaulted Defendant Alvarez………..4

    3.  There Is A Genuine Dispute Of Material Fact As To Whether Mr. Moore Was Resisting Arrest As He Was Pummeled While Laying Defenseless With His Head Against A Staircase……………………………………………………….....6

    4.  There Was No Probable Cause To Make A Warrantless Arrest Of Mr. Moore For Conduct That Occurred Outside Of The Defendants' Presence During The First Incident...................................................................................................7

    5.  The Officers Did Not Arrest Mr. Moore For Disorderly Conduct With Reasonable Promptness During The First Incident....................................................................8

    6.  This Court Should Reject The Defendants' Claims of Qualified Immunity Because They Have Not Met Their Burdens of Proof and Persuasion To Show The Law Was Not Clearly Established................................................................11

**B.  This Court Should Deny Summary Judgement on Count II (Excessive Force) and Count VII (Battery)**………………………………………………………………………14

    1.  There Is A Genuine Dispute As To The Reasonableness Of The Defendants' Use Of Force………………………………………………………………………..14

    2.  Defendants Have Not Met Their Burdens of Proof And Persuasion To Show The Law Was Not Clearly Established So As To Warrant The Application Of Qualified Immunity……………………………………………………………18

**C.  This Court Should Grant Summary Judgment On Count VI (Malicious Prosecution) Because No Reasonable Person Could Find That Plaintiff Punched Defendant Alvarez In The Face**……………………………………………………......19

CONCLUSION IN OPPOSITION.....................................................................................................21

# TABLE OF MAJOR AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..........................................3

*Artiga Carrero v. Farrelly*,
270 F. Supp. 3d 851 (D. Md. 2017) ...........................................................................12

*Bailey v. Kennedy*,
349 F.3d 731, 734 (4th Cir. 2003) ..............................................................................18

*Candelero v. Cole*,
152 Md. App. 190, 199, 831 A.2d 495, 500 (2003) ....................................................19

Carson v. Pape,
15 Wis.2d 300, 112 N.W.2d 693, 697 (1961) .............................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..........................................3

*Collette v. Director of Revenue*,
717 S.W.2d 551 (Mo.Ct.App.1986) ...........................................................................8

*Commonwealth v. Howe*,
405 Mass. 332, 540 N.E.2d 677, 678 (1989) ..........................................................2,9

*Dent v. Montgomery Cty. Police Dep't*, 7
45 F. Supp. 2d 648, 654–55 (D. Md. 2010) ................................................................3

*Devenpeck v. Alford*,
543 U.S. 146, 155 (2004) .........................................................................................11

*District of Columbia v. Wesby*,
138 S. Ct. 577, 586 (2018) .........................................................................................7

*Dixon v. State*,
23 Md. App. 19, 26 (1974) ....................................................................................7,13

*Elliott v. Leavitt*,
99 F.3d 640, 642 (4th Cir.1996) ...............................................................................15

*Emmett v. Johnson*,
532 F.3d 291, 297 (4th Cir.2008) ...............................................................................3

*Graham v. Connor,*
490 U.S. 386 (1989) ....................................................................................15

*Henry v. Purnell,*
501 F.3d 374, 377 (4th Cir. 2007) ...........................................................12,14

*Hope v. Pelzer,*
536 U.S. 730, 741 (2002) .............................................................................12

*In re Q.M.,*
2017 WL 4075169, at 6 (Md. Ct. Spec. App. Sept. 14, 2017) .....................5

*Jenkins v Talladega City Bd. Of Ed.,*
115 F.3d 821, 826, n. 4 (11th Cir. 1997) ...................................................13

*JKC Holding Co. LLC v. Washington Sports Ventures, Inc.,*
264 F.3d 459, 465 (4th Cir.2001) ................................................................3

*Jones v. Buchanan,*
325 F.3d 520, 527 (4th Cir. 2003) .......................................................14,15,18

*McDaniel v. Arnold,*
898 F. Supp. 2d 809, 832 (D. Md. 2012) ...............................................11,12

*McCarthy v. State,*
2 Md. App. 400, 402 (1967) ....................................................................1,13

*Meyers v. Baltimore City,*
713 F.3d 723 (4th Cir. 2013) .......................................................................12

*Oleson v. Pincock,*
68 Utah 507, 251 P. 23, 26 (1926) ..............................................................9

*Pearson v. Callahan,*
555 U.S. 223, 236 (2009) .............................................................................12

People v. Hampton,
164 Cal.App.3d 27, 209 Cal.Rptr. 905, 907 (1985) ....................................9

*Rich v. State,*
205 Md. App. 227, 240, 205 (2012) ..............................................................6

*Scott v. Harris,*
550 U.S. 372, 378, 380-381 (2007) .............................................................19

*Smith v. Ray*,
781 F.3d 95 (4th Cir. 2015) ..................................................................2,13,19

*Snowden v. State*,
321 Md. 612, 617 (1991) .................................................................................5

*Snyder v. State*,
210 Md. App. 370, 379 (2013) ........................................................................5

*State v. Warren*,
supra, 103 N.M. 472, 709 P.2d 194 (1985) ....................................................9

State v. Wozniak,
94 Idaho 312, 486 P.2d 1025, 1029 (1971) .....................................................9

*Stutzman v. Krenik*,
350 F. Supp. 3d 366, 377 (D. Md. 2018) .........................................................7

*Torres v. State*,
147 Md. App. 83, 86 (2002) ...............................................................2,8,9,10,13

*United States v. Black*,
707 F.3d 531, 537 (4th Cir. 2013) ...................................................................4

*Walker v. State*
125 Md. App. at 54, 60, 924-925 (1999) .......................................................20

*Walker v. State*
125 Md. App. At 66-67.....................................................................................21

*Wilson v. Kittoe*,
337 F.3d 392 (4th Cir. 2003) .........................................................................12

*Winebrenner v. State*,
6 Md. App. 440, 446 (1969) .............................................................................7

*Yates v. State*,
127 Ga. 813, 56 S.E. 1017, 1019 (1907) .........................................................9

**Statutes**

Md. Code, Crim. Law § 3–203(a) ....................................................................5

Md. Code Ann., Crim. Proc. § 2-202.............................................................7,13

Md. Code Ann., Crim. Law § 6-301(b), (c) .....................................................7

Md. Code Ann., Crim. Law § 6-205(e) ...........................................................................7

Md. Code Ann., Crim. Law § 10-201 (d)........................................................................7

Wharton's Criminal Procedure § 70 (13th ed. 1989) ...................................................10

**Other Authorities**

Fed. R. Civ. P. 56...........................................................................................................3

Fed. R. Civ. P. 56(c).......................................................................................................3

Md. Rule 4-202(b)(1)(B) ...............................................................................................19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHRISTOPHER MOORE | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 18-cv-02151-TDC |
| OFFICER MICHAEL | * | |
| PEITZMEIER, *et al.* | * | |
| Defendants | * | |
| | * | |

\*      \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
CROSS MOTION FOR SUMMARY JUDGMENT ON COUNT VI**

**I.      Summary of Argument**

Body worn camera ("BWC") footage coupled with admissions by the Defendants show

Plaintiff was pummeled with punches to the face as he lay prone on a cement staircase. The

beating left a pool of blood and Plaintiff asking the officers, "why you hit me dog?" There is

no lawful answer to Plaintiff's question.

Defendants attempt to justify Plaintiff's initial seizure by setting forth the unique and

unlawful argument that they had probable cause to conduct a warrantless arrest Plaintiff for

misdemeanors that occurred outside of their presence. However, as has been clearly

established since, at least, 1967, an officer lacks probable cause to arrest a suspect for a

misdemeanor committed outside of his presence. *See McCarthy v. State*, 2 Md. App. 400,

402 (1967). Moreover, regarding misdemeanors committed an officer's presence, an officer

must arrest a suspect during the "one transaction" with "reasonable promptness" unless an

objective necessity requires a delay. *Torres v. State*, 147 Md. App. 83, 86 (2002) citing

*Commonwealth v. Howe*, 405 Mass. 332, 540 N.E.2d 677, 678 (1989). Here, Defendants admitted there was no indication Plaintiff posed a danger to anyone during the first incident, so they left the scene of this incident without arresting Plaintiff for alleged misdemeanors. After returning to the scene for a second time, the Defendants relied on the purported probable cause from the first incident and immediately seized Plaintiff. Such conduct is objectively unlawful notwithstanding any subjective beliefs the Defendants set forth. Thus, summary judgment should not be granted as to Count I.

As to Count II, the crux of the genuinely disputed facts is that Defendants unreasonably used force on an unarmed suspect being arrested for misdemeanors. Defendants Alvarez and Lenhart participated as principals by directly punching Plaintiff, thereby causing an acute head injury, laceration of the eyebrow, abrasions, and a neck strain. Defendants Lenhart and N'kodia aided and abetted the use of force by putting Plaintiff's arms behind his back and sticking a knee in Plaintiff's lower body, respectively. Defendants attempt to justify this use of force by setting for variations of fabricated excuse that Plaintiff punched Defendant Alvarez in the face. This excuse is directly rebutted by BWC footage showing Plaintiff did not punch Defendant Alvarez in the face. At best, Plaintiff aimlessly motioned with an open hand from a seated position after Defendant Alvarez touched his shoulder to get his attention. To the extent Plaintiff's aimless, open-handed motion constitutes some level of resistance (which Plaintiff does not concede), clearly established law is that law enforcement may not use slight resistance to justify punching a misdemeanor suspect that is not trying to flee. *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015). The Defendants overreacted by beating Plaintiff and leaving behind a pool of blood.

Defendant Peizmeier memorialized the Defendants' falsehood under oath by claiming, in a Statement of Charges, that Plaintiff punched Defendant Alvarez in the face. Given that this falsehood is rebutted by BWC, this Court should use the BWC to grant summary judgment in Plaintiff's favor as to his claim for malicious prosecution.

## II.     Legal Standard

Summary judgment, under Fed. R. Civ. P. 56, should be denied where material factual issues may be reasonably resolved in favor of the non-moving party. "It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008). In other words, if there clearly exists factual issues 'that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,' summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001). *Dent v. Montgomery Cty. Police Dep't*, 745 F. Supp. 2d 648, 654–55 (D. Md. 2010).

## III.    Argument

### a.    This Court Should Deny Summary Judgement on Count I (Unlawful Seizure)

*1.    This Court Should Deny Summary Judgement on Count I Because The Physical Encounter[1] Between Mr. Moore and Defendant Officers Occurred After Mr. Moore Was Already Seized Within The Meaning Of The Fourth Amendment*

---

[1] There is a dispute as to the nature of this physical encounter. The Defendants characterize the physical encounter as an assault by Mr. Moore upon Defendant Álvarez. Mr. Moore maintains he never assaulted Defendant Alvarez but was nevertheless pummeled to the point where he was hospitalized. For purposes of this section, given the straightforward nature of analyzing the sequence of events, Plaintiff characterizes this as a "physical encounter."

This Court should not rely on conduct that occurred after Mr. Moore was seized to determine the propriety of the seizure. "A person is 'seized' within the meaning of the Fourth Amendment if, 'in view of all [of] the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Black*, 707 F.3d 531, 537 (4th Cir. 2013). Here, there is no dispute that "[f]rom the moment Officer Peitzmeier approached Plaintiff during the second encounter, Plaintiff was not free to leave." See Dkt. 55-2 at 5. Additionally, Plaintiff was certainly seized within the meaning of the Fourth Amendment when Defendant Alvarez touched Plaintiff. See Dkt. 55-2 at 7; see also BWC Peitzmeier, J.R. 1, 3:; and BWC of Officer Lenhart, J.R. 2, 1:30.

The physical encounter between Mr. Moore and Defendant Officers occurred after Defendants Peitzmeier and Alvarez seized Mr. Moore within the meaning of the Fourth Amendment. *See* Dkt. 55-2 at 7. Thus, this Court should summarily reject any argument that conduct following the seizure forms the basis for justifying the seizure. Such an argument is factually impossible. Thus, this Court must reject the Defendants' argument that an "assault" or "resisting arrest" justifies Mr. Moore's seizure.

    2.   *This Court Should Deny Summary Judgement on Count I Because There Was No Probable Cause Mr. Moore Assaulted Defendant Alvarez*

The video evidence in this case shows Mr. Moore did not assault Defendant Alvarez. BWC Peitzmeier, J.R. 1, 3:20 – 4:20; and BWC of Officer Lenhart, J.R. 2, 1:30 -2:33. Defendant Peitzmeier brazenly testified under oath Mr. Moore punched Defendant Alvarez in the face. See Dkt. 55-2 at 7. Defendant Peitzmeier also wrote in the Statement of Charges, "Moore suddenly reached out and punched Ofc. Alvarez in the face." See Dkt. 55-2 at 11. The other Defendants, recognizing the untruthfulness of this allegation, were more equivocal, and indicated Mr. Moore swung toward Defendant Alvarez's face. See Dkt. 55-2 at 7-9. The body worn camera ("BWC")

(BWC Peitzmeier, J.R. 1, 3:20 – 4:20; and BWC of Officer Lenhart, J.R. 2, 1:30 -2:33) shows

the truth. Mr. Moore did not punch Defendant Alvarez in the face nor did he swing at Defendant

Alvarez. Instead, a shirtless and shoeless Mr. Moore was seated with his head in his lap when he

aimlessly motioned with an open hand. BWC Peitzmeier, J.R. 1, 3:20 – 4:20; and BWC of

Officer Lenhart, J.R. 2, 1:30 -2:33. This aimless motion cannot be deemed to be a punch in the

face. The Maryland Court of Special Appeals has analyzed a similar encounter and ruled

accordingly.

"In Maryland, second-degree assault is a statutory offense. *See Snyder v. State*, 210 Md.

App. 370, 379 (2013). Md. Code, Crim. Law § 3–203(a) states, "a person may not commit an

assault." The statutory offense of second-degree assault has three varieties: (1) intent to frighten;

(2) attempted battery; and (3) battery. *Snyder* at 382. The Court of Appeals further defined

battery as "the unlawful application of force to the person from another." *Snowden v. State*, 321

Md. 612, 617 (1991). We find that by merely **swatting away the officer's hands, the**

**appellants actions do not rise to the level of statutory second-degree assault**." *In re Q.M.*,

2017 WL 4075169, at 6 (Md. Ct. Spec. App. Sept. 14, 2017) (Emphasis added). There, the

respondent intentionally aimed at a known police officer by swatting away the officers' hand. *Id*.

Here, Mr. Moore was clearly intoxicated, and seated with his head in his lap when he aimlessly

motioned with an open hand. Mr. Moore did not throw a punch. Mr. Moore did not aim and

attempt to throw a punch. Mr. Moore did not stand up to gain footing to throw a punch. He

aimlessly swiped from a seated position with his head down. Under these circumstances, there

was no reasonable basis to conclude Mr. Moore tried to frighten Defendant Alvarez or

*offensively* touched Defendant Alvarez. Accordingly, this Court should deny summary judgment

on Count I where the Defendants argue there was probable cause to arrest Mr. Moore for assault after he aimlessly motioned from a seated position.

> 3. *This Court Should Deny Summary Judgement on Count I Because There Is A Genuine Dispute Of Material Fact As To Whether Mr. Moore Was Resisting Arrest As He Was Pummeled While Laying Defenseless With His Head Against A Staircase*

There is a genuine dispute as to whether Mr. Moore's contemporaneous statements, "I'm not fighting you, my neck, my neck, my neck, I'm not fighting you dog" shows he was not using force to resist arrest. See Dkt. 55-2 at 9. To support probable cause that Mr. Moore resisted arrest, the Defendants must show "(1) that a law enforcement officer arrested or attempted to arrest [Mr. Moore]; (2) that the officer had probable cause to believe that [Mr. Moore] had committed a crime, i.e., that the arrest was lawful; and (3) that [Mr. Moore] refused to submit to the arrest [and] resists the arrest by force." *Rich v. State*, 205 Md. App. 227, 240 (2012). Regarding the third element, "both a refusal to submit to lawful arrest and resistance by force or threat of force are necessary to commit the offense of resisting arrest in Maryland." *Rich v. State*, 205 Md. App. at 250. Mr. Moore disputes the legality of his arrest. See Supra. However, for purposes of this section, the relevant dispute is whether there was probable cause he used force to resist. His exclamations, "I'm not fighting you, my neck, my neck, my neck, I'm not fighting you dog" coupled with the fact that he lay defenseless on the ground as he made these statements generates a genuine dispute as to whether he was using force to resist. A reasonable jury could find he was in pain and "not fighting" the officers, as he stated. Mr. Moore had no time to reflect at the time he made these statements. He was too intoxicated to manufacture his lack of resistance. A reasonable person could find that he was truly not resisting but screaming in pain. Thus, this Court should deny summary judgment on Count I where the Defendants argue there

was probable cause to arrest Mr. Moore for resisting arrest where he was screaming, "I'm not fighting you, my neck, my neck, my neck, I'm not fighting you dog".

>    4.  *This Court Should Deny Summary Judgement On Count I Because There Was No Probable Cause To Make A Warrantless Arrest Of Mr. Moore For Conduct That Occurred Outside Of The Defendants' Presence During The First Incident*

It is a fundamental that a warrantless arrest for a misdemeanor committed outside of an officer's presence is unlawful. Md. Code Ann., Crim. Proc. § 2-202. Indeed, "[a] warrantless arrest for a misdemeanor is permitted only when the misdemeanor occurs in the presence of the arresting officer." *Dixon v. State*, 23 Md. App. 19, 26 (1974). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 377 (D. Md. 2018) quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018).

The allegations from the first incident, malicious destruction of property[2] and disorderly conduct, are both misdemeanors. *See* Md. Code Ann., Crim. Law § 6-301(b), (c) (malicious destruction of property, no matter the value at issue, is a misdemeanor); *see also Winebrenner v. State*, 6 Md. App. 440, 446 (1969) ("the misdemeanor of malicious destruction of property" that occurs outside of the presence of a police officer cannot form the basis for a warrantless arrest."); *see also* Md. Code Ann., Crim. Law § 10-201 (d) (disorderly conduct is a misdemeanor).

The analysis with regard to destruction of property is rudimentary. The allegations occurred prior to the officer's arrival and they were required to obtain a warrant. Accordingly, this Court should reject any argument that the Defendants had probable cause to arrest Mr. Moore for destruction of property. There are no lawful circumstances where the officers had

---

[2] Although the Defendants have not specifically argued that they had probable cause for the crime attempted fourth degree burglary, it is important to note that the same rationale applies because attempted fourth degree burglary is a misdemeanor. See Md. Code Ann., Crim. Law § 6-205(e).

probable cause to arrest Mr. Moore for this misdemeanor offense which occurred outside of their presence.

Likewise, any alleged loudness, i.e., alleged disorderly conduct, on the part of Mr. Moore that occurred outside of the presence of the Defendants cannot form the basis for probable cause to arrest Mr. Moore. Accordingly, this Court should not construe any conduct that occurred outside of the officers' presence to constitute probable cause to arrest Mr. Moore. Summary judgement must be denied as to Count I given that the Defendants have argued that this Court could make a warrantless arrest for conduct that occurred outside of their presence.

5. *This Court Should Deny Summary Judgement On Count I Because The Officers Did Not Arrest Mr. Moore For Disorderly Conduct With Reasonable Promptness During The First Incident*

Assuming, *arguendo*, Defendants Peitzmeier and Lenhart had probable cause to arrest Mr. Moore during the first incident for disorderly conduct, the Defendants did not arrest Mr. Moore for disorderly conduct with reasonable promptness. An "officer may make a warrantless arrest only if the arrest is made with reasonable promptness after the offense (or supposed offense) is attempted or committed." *Torres v. State*, 147 Md. App. 83, 86 (2002). The requirement of reasonable promptness in effectuating a warrantless misdemeanor arrest "is designed to prevent too great an inroad on the rule requiring a warrant of arrest." *Torres v. State*, 147 Md. App. at 97. "The reason for requiring a warrant holds especially true in cases of misdemeanors where, because of the relative lack of severity of the offense, 'greater ... formality [should be] prescribed for the exercise of the power to deprive the citizen of his liberty.'" *Id* (Internal citations omitted). In *Torres*, the Court specifically relied on the facts that "[t]he reasonable promptness requirement was found not to have been met when an officer waited two hours after the misdemeanor to make a misdemeanor arrest in *Collette v. Director of Revenue*,

8

717 S.W.2d 551 (Mo.Ct.App.1986). *See also State v. Warren*, supra, 103 N.M. 472, 709 P.2d

194 (1985) (delay of two to three hours in making arrest rendered arrest invalid)." *Torres v.*

*State*, 147 Md. App. At 97.

      The *Torres* Court also noted, "[a]n arrest for a misdemeanor committed in the arresting

officer's presence must be made as quickly as circumstances permit."); *Commonwealth v. Howe*,

405 Mass. 332, 540 N.E.2d 677, 678 (1989) (noting that, at common law, a police officer may

arrest without a warrant for a misdemeanor which "is still continuing at the time of the arrest or

only interrupted, **so that the offence and the arrest form parts of one transaction**"); *State v.*

*Warren*, 103 N.M. 472, 709 P.2d 194, 200 (1985) ("It is a general rule that once an officer has

the right to arrest without a warrant for a misdemeanor ... committed in his presence he must do

so as soon as he reasonably can, and if he delays for purposes disassociated with the arrest or for

such a length of time as to necessarily indicate the interposition of other purposes, he cannot

arrest without a warrant."); People v. Hampton, 164 Cal.App.3d 27, 209 Cal.Rptr. 905, 907

(1985) (a warrantless arrest for misdemeanors "must be made at the time of offense or within a

reasonable time thereafter."); State v. Wozniak, 94 Idaho 312, 486 P.2d 1025, 1029 (1971) ("An

arrest without a warrant for a misdemeanor made within a prompt and reasonable time after the

offense is valid."); Carson v. Pape, 15 Wis.2d 300, 112 N.W.2d 693, 697 (1961) **("[A]n arrest**

**without a warrant for a misdemeanor must be made promptly, either at the time of the**

**offense, or as soon thereafter as the circumstances reasonably permit**."); *Oleson v. Pincock*,

68 Utah 507, 251 P. 23, 26 (1926) ("[I]n order to be valid, the arrest must be made at the time the

offense is committed, or within a reasonable time thereafter, or upon fresh and immediate pursuit

of the offenders."); *Yates v. State*, 127 Ga. 813, 56 S.E. 1017, 1019 (1907) (A warrantless arrest

for a misdemeanor "must have been made at the time of, or within a reasonable time after, the

commission of the offense...."); Charles E. Torcia, Wharton's Criminal Procedure § 70 (13th ed. 1989) (If the arresting officer "does not act with reasonable promptness, and if the delay was unnecessary, the arrest without a warrant will be unlawful."); 5 Am.Jur.2d Arrest § 55 (2001) ("The arrest [for a misdemeanor] must be made at the time the offense, or some part of it, is being committed, or within a prompt and reasonable time after its commission, or upon fresh and immediate pursuit of the offender."); H.D. Warren, Annotation: Peace Officer's Delay in Making Arrest Without a Warrant for Misdemeanor or Breach of Peace, 58 A.L.R.2d 1056, 1063 (1958)." *Torres v. State*, 147 Md. App. at 93–95 (emphasis added).

In this case, the officers admittedly stayed on scene for thirty minutes during the first incident, left the scene, and returned approximately ten minutes later. Forty minutes passed, ten of which the officers had voluntarily left the scene. See Dkt. 55-2 at 4-5. Under *Torres*, this Court must analyze the "relative lack of severity" of the disorderly conduct[3] allegations at issue, yelling, "I will go home with no problem, no problem whatsoever" and "the only fucking uncle I got." See Dkt. 55-2 at 3. The relative lack of severity of these statements underscores the need to make this arrest during "one transaction" or undergo the formality of obtaining a warrant. *See Torres* at 93. Here, the disorderly conduct allegations were so minor that the officers left the scene without arresting Mr. Moore. There was no reasonable necessity of a delay in arresting Mr. Moore.

The defense will undoubtedly respond by arguing Defendants Peitzmeier and Lenhart were subjectively trying to be polite to Mr. Moore, and therefore left the scene without arresting Mr. Moore. This Court need not engage in an analysis as to whether the officers were

---

[3] This section does not address the allegations of malicious destruction of property because those misdemeanor allegations cannot be lawfully used to establish probable cause for Mr. Moore's warrantless arrest. *See Supra*.

subjectively trying to be polite because the "subjective intent"[4] of an arresting officer is not a basis to validate or invalidate probable cause for an arrest. *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004). Notwithstanding the Defendants' testimony as to their subjective intent in failing to arrest Mr. Moore during the first incident, there was no objective necessity for the officers to leave the scene. Warrantless misdemeanor arrests must be made during one transaction unless there is an objectively necessary reason for a delay. There was no such objective necessity in this case. If this Court were to rule otherwise, all police officers' subjective reasons for delaying a misdemeanor warrantless arrest would become the focus of litigation. This is precisely the type of analysis *Devenpeck* rejects. Objectively, the officers were required to arrest Mr. Moore for disorderly conduct during the first incident assuming probable cause existed. Leaving the scene without an objective necessity invalidates the warrantless arrest the arrest that occurred during the second transaction. To hold otherwise would give officers the discretion to argue their subjective intent – as opposed to objective necessity - in delaying a warrantless arrest for a misdemeanor.

> 6. *This Court Should Reject The Defendants' Claims of Qualified Immunity Because They Have Not Met Their Burdens of Proof and Persuasion To Show The Law Was Not Clearly Established*

Assessing a claim of qualified immunity requires an analysis as to "(1) whether the facts alleged, taken in the light most favorable to the party asserting the injury... show the officer's conduct violated a constitutional right; and (2) whether the right at issue was clearly established in the specific context of the case—that is, whether it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *McDaniel*

---

[4] Subjective intent could arguably be relevant to state law immunity issues surrounding Plaintiff's claims of negligence (Count IV) and gross negligence (Count V). However, Plaintiff concedes summary judgment on Counts IV and V. Accordingly, the Defendants' purported subjective intent is not relevant to the remaining claims.

*v. Arnold*, 898 F. Supp. 2d 809, 832 (D. Md. 2012) (Internal citations omitted). Although addressing the first question prior to addressing the second "is often appropriate," it is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, as contemplated by *Pearson*, it is appropriate to address the first question prior to addressing the second. This case does not present such a novel legal argument so as to render the "clearly established" question a priority over the threshold question of constitutionality.

As a starting point, a "plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (Internal citations omitted). Still, "[t]he defendant bears the ultimate 'burden of proof and persuasion with respect to a defense of qualified immunity,' including whether the right at issue was clearly established at the time of the purported violation." *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851 (D. Md. 2017), *quoting Meyers v. Baltimore City*, 713 F.3d 723 (4th Cir. 2013); *see also Wilson v. Kittoe*, 337 F.3d 392 (4th Cir. 2003).

This Court should summarily reject the Defendants' argument that Plaintiff is required to cite a "robust line of cases finding a Fourth Amendment violation under similar circumstances." ECF 55-3 at 17. Such an argument is squarely contrary to the law. For purposes of qualified immunity, officials can still be on notice that their conduct violates established law even in "novel factual circumstances", as notice does not require that facts of previous cases be materially or "fundamentally similar" to situation in question; rather, salient question is whether *the state of the law* at the time gives officials fair warning that their conduct is unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Indeed, the Court "do[es] not require a case directly on point in order to conclude that the law was clearly established so long as existing precedent

[has] placed the statutory or constitutional question beyond debate." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The state of the law is clear.

It has been clearly established since, at least 1967, that an officer lacks probable cause to arrest a suspect for a misdemeanor committed outside of his presence. *See McCarthy v. State*, 2 Md. App. 400, 402 (1967)[5] ("if no misdemeanor was committed in the presence of the officer, the arrest would be unlawful.") see also, *Dixon v. State*, 23 Md. App. 19, 26 (1974) ("A warrantless arrest for a misdemeanor is permitted only when the misdemeanor occurs in the presence of the arresting officer."). This long-standing principle has been codified in Maryland since, at least, October 1, 2002. See Md. Code Ann., Crim. Proc. § 2-202. Accordingly, the Defendants have had ample notice that arresting Mr. Moore without a warrant based on misdemeanor allegations that occurred outside of their presence would be unlawful. Accordingly, the Defendants cannot bear their burden of proof or persuasion as to qualified immunity based on misdemeanors that occurred outside of their presence (i.e., the malicious destruction of property and disorderly conduct allegations from the first incident).

With regard to the alleged misdemeanors that occurred in Peitzmeier and Lenhart's presence, it was clearly established since, at least 2002, that the officers were required to make an arrest as a part of one transaction unless there was an objectively reasonable necessity in delaying the arrest. *See Torres v. State*, 147 Md. App. 83, 86 (2002). Here, it is important to note that the officers' subjective intent is irrelevant.

> Similarly, our Court has consistently conducted an objective analysis of qualified immunity claims and stressed that an officer's subjective intent or beliefs play no role. In *Melgar v. Greene*, we made clear that " 'an officer's good intentions' do not make

---

[5] Federal courts have long recognized that the decisions of the highest court of a jurisdiction constitute clearly established law. *See Jenkins v Talladega City Bd. Of Ed.*, 115 F.3d 821, 826, n. 4 (11th Cir. 1997) (explaining "in this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose").

> objectively unreasonable acts constitutional." 593 F.3d at 361
> (citations omitted). We reiterated in *Owens v. Lott* that the
> qualified immunity "determination 'is an objective one, dependent
> not on the subjective beliefs of the particular officer at the scene,
> but instead on what a hypothetical, reasonable officer would have
> thought in those circumstances.' " 372 F.3d 267, 279 (4th
> Cir.2004) (*quoting Wilson v. Kittoe*, 337 F.3d 392, 402 (4th
> Cir.2003)). And in *Clem v. Corbeau*, we held that "[w]e may
> assume that [an officer] subjectively believed that the force he used
> was not excessive; that, however, is not the question. The question
> is 'whether it would be clear to a reasonable officer that his
> conduct was unlawful in the situation he confronted.' " 284 F.3d
> 543, 552–553 (4th Cir.2002) (citations omitted). S*ee also Jones v.
> Buchanan*, 325 F.3d 520, 527 (4th Cir.2003) ("We do not consider
> the officer's 'intent or motivation.' ") (citing *Elliott v. Leavitt*, 99
> F.3d 640, 642 (4th Cir.1996)); *Rowland v. Perry*, 41 F.3d 167, 173
> (4th Cir.1994) ("Subjective factors involving the officer's motives,
> intent, or propensities are not relevant.").

*Henry v. Purnell*, 652 F.3d 524, 535 (4th Cir. 2011). Thus, the Defendants' testimony is

irrelevant where they argue their subjective intent in failing to arrest Mr. Moore during the first

encounter was to give Mr. Moore a chance to go to sleep because he did not appear he was going

to hurt anyone. Assuming, *arguendo*, the truth of the Defendants' subjective intent, it is

irrelevant. The relevant inquiry is that they did not arrest him during the first transaction and left

the scene. The clear state of the law is that they were required to arrest Mr. Moore as a part of

one transaction or obtain a warrant. They did neither. Thus, they cannot meet their burdens of

proof and persuasion to establish that the law was not clearly established.

     **b.  This Court Should Deny Summary Judgement on Count II (Excessive Force)
and Count VII (Battery)**

     1.  There Is A Genuine Dispute As To The Reasonableness Of The Defendants' Use
Of Force

     "The Fourth Amendment prohibition on unreasonable seizures bars police officers from

using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir.

2003). "A court determines whether an officer has used excessive force to effect a seizure based on a standard of objective reasonableness." *Id*. This inquiry does "not consider the officer's intent or motivation." *Id*. citing *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir.1996). "Rather, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id*. quoting *Graham v. Connor*, 490 U.S. 386 (1989).

The *Graham* factors include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. The extent of the plaintiff's injury is also a relevant consideration. *Jones v. Buchanan*, 325 F.3d at 527. Analyzing the Graham factors, there is a dispute as to the reasonableness of the Defendants' actions.

First, the severity of the crime at issue is misdemeanor in nature. The misdemeanors from the first incident were so minor that Defendants Peitzmeier and Lenhart did not arrest Mr. Moore. In fact, Defendants Peitzmeier and Lenhart admit there was no indication Mr. Moore was going to hurt anyone. See Dkt. 55-2 at 4 ("the police did not believe that Plaintiff would hurt anyone"). The statements he made were not violent in nature ("I will go home with no problem, no problem whatsoever" and "the only fucking uncle I got"). See Dkt. 55-2 at 3. Thus, the first incident presented no reasonable indication that violence was a concern, which is underscored by the Defendants leaving Mr. Moore on the scene.

There was similarly no indication Mr. Moore was going to hurt anyone during the second incident. Indeed, Defendant Peitzmeier did not deem Plaintiff a threat to any particular citizen. Dkt. Entry 55-2 at 5. Mr. Moore was shirtless, shoeless, seated, and alone. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. The officers outnumbered him. He never took a fighting

stance. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. He never threatened any

officer. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. He never balled up his fist

as if were going to hurt an officer. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2.

The officers admit that there was no specific person they believed he was going to hurt. The

BWC attached to this Opposition shows Mr. Moore in a non-aggressive posture as he was seated

with his head in his lap. Simply stated, there was no indication Mr. Moore was going to hurt

anyone. Thus, the first *Graham* factor, the severity of the crime at issue, is a non-violent

misdemeanor that weighs in Mr. Moore's favor.

The second *Graham* factor, whether Mr. Moore posed an immediate threat to the safety

of the officers or others, shows the officers used excessive force. Mr. Moore was unarmed and

there is no indication he carried anything that made it appear was armed. Dkt. 55-2 at 6. He was

seated and there was no member of the public close to him. BWC Peitzmeier, J.R. 1, and BWC

of Officer Lenhart, J.R. 2. He never touched an officer until he was touched. BWC Peitzmeier,

J.R. 1, and BWC of Officer Lenhart, J.R. 2. Defendant Alvarez touched Mr. Moore, and Mr.

Moore reacted by aimlessly motioning with an open hand from a seated position. BWC

Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. There was no reason to believe Mr.

Moore posed a danger. He did not attempt to gain any tactical advantage by standing up. BWC

Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. He did not aim or throw a punch. BWC

Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. As the BWC shows, his aimless motion

cannot reasonably be construed as a punch. BWC Peitzmeier, J.R. 1, and BWC of Officer

Lenhart, J.R. 2. Moreover, it certainly cannot be reasonably construed to constitute a punch to

Defendant Alvarez's face. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. Thus,

the second *Graham* factor shows Mr. Moore did not pose a danger to the public or the officers and weighs in Mr. Moore's favor.

The third *Graham* factor, whether Mr. Moore actively resisted arrest or attempted to evade arrest by flight, shows the Defendants used excessive force. Mr. Moore certainly never tried to flee. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. There is a genuine dispute as to whether he actively resisted as he was getting punched. This genuine dispute stems from Mr. Moore screaming in pain, "I'm not fighting you, my neck, my neck, my neck, I'm not fighting you dog." Dkt. 55-2 at 9. Moreover, he made these statements while he lay defenseless on the ground. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. A reasonable jury could find he was in pain and "not fighting" the officers. Mr. Moore had no time to reflect at the time he made these statements. A reasonable person could find that he was truly not resisting but screaming in pain.

Lastly, the extent of Mr. Moore's injuries shows the excessiveness of the Defendants' use of force. After getting punched in the face, there was a pool of blood on the steps and a cut on Mr. Moore's head that was bleeding. Dkt. 55-2 at 9. Mr. Moore was transported to Shady Grove Medical Center by ambulance, and he was noted to suffer an acute head injury, laceration of the eyebrow, abrasions, and a neck strain. Dkt. 55-2 at 9. Thus, this factor weighs in Mr. Moore's favor and there is a genuine dispute as to whether the Defendants' actions[6] constitute excessive force.

---

[6] As to each Defendants' individual actions, Defendant Alvarez admits to swinging at Mr. Moore one or two times. Dkt. 55-2 at 7.  Defendant Alvarez was standing inches away from Mr. Moore, while Mr. Moore was seated. BWC Peitzmeier, J.R. 1, and BWC of Officer Lenhart, J.R. 2. A reasonable inference is that Defendant Alvarez actually hit Mr. Moore since he swung at him from an elevated position while he was only inches away. Defendant Lenhart admits to punching Plaintiff in the face three or four times. Dkt. 55-2 at 8. Defendant Peitzmeier admits to assisting Defendant Alvarez during this use of force. Dkt. 55-2 at 7-8. Defendant N'kodia similarly admits to assisting this use of force by placing his knee in Mr. Moore's lower body. Dkt. 55-2 at 9. Accordingly, there is a genuine dispute as to whether Defendants Alvarez and Lenhart are liable as principals. Additionally, there is a genuine dispute as to whether Defendants Peitzmeier and N'kodia are liable as aiders and abettors. *See Thaler v. Donald J. Trump for*

2.  Defendants Have Not Met Their Burdens of Proof And Persuasion To Show The Law Was Not Clearly Established So As To Warrant The Application Of Qualified Immunity[7]

In *Jones v. Buchanan*, 325 F.3d 520, the plaintiff had continuously drunk Canadian Mist whiskey "throughout the day". *Id*. at 523. He went to a police station to sleep off his intoxication before Court the following day. *Id*. The officers were "nice" to him during the transport ride. *Id*. At the station, the plaintiff used foul language and an officer told him to quiet down. *Id*. at 524. Plaintiff "got mad" and began to stand up. *Id*. The defendant officer knocked him to the ground, broke his nose and there was a puddle of blood where the Plaintiff lay. Id. at 524-5. There, the Court declined to extend qualified immunity to the defendant officer for its use of force. Similar to *Jones*, the Defendants cannot hide behind the fact that they were initially "nice" to Mr. Moore before striking him leaving him bloody and injured.

Likewise, in *Bailey v. Kennedy*, 349 F.3d 731, 734 (4th Cir. 2003), the Court declined to extend qualified immunity where officers struck a plaintiff in the face "two or three times" with a closed fist. The plaintiff was drunk and allegedly suicidal when officers found him after a neighbor called 911. *Id*. After requiring the effort of multiple officers to take the plaintiff to the ground, the officer punched the plaintiff two or three times to subdue him and handcuff him. *Id*. at 735. The plaintiff suffered a cut to his mouth. *Id*. There, the Court refused to apply qualified immunity to the officers' actions. Punching Mr. Moore several times with a closed fist, like in *Bailey*, violated clearly established precedent.

---

*President, Inc.*, 304 F. Supp. 3d 473, 480 (D. Md.), aff'd, 730 F. App'x 177 (4th Cir. 2018) quoting *Duke v. Feldman*, 245 Md. 454, 457 (1967) ("A person may held liable as a principal for assault and battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort.") . Thaler v. Donald J. Trump for President, Inc., 304 F. Supp. 3d 473, 480 (D. Md.), aff'd, 730 F. App'x 177 (4th Cir. 2018)

[7] The legal standard for qualified immunity is set forth herein. *See Supra* at 8-9. Thus, Plaintiff will not repeat the standard in this section.

Yet still, *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015), the Court found that qualified immunity did not apply where an officer threw an arrestee to the ground and punched her while she was only suspected of misdemeanor and was not attempting to flee. *Id*. The Court specifically noted an officer may not use "slight resistance" to justify significant force. *Id*. at 103. The same result is warranted in this case. Any "slight resistance" on the part of Mr. Moore where he was being investigated for misdemeanors cannot justify Defendants' punching him as he was not attempting to flee. Accordingly, Defendants have not met their burdens of proof or persuasion given the foregoing authority as it relates to punching arrestees to subdue them. This Court should reject the Defendants' claim of qualified immunity as it relates to the excessive force count.

> **c. This Court Should Grant Summary Judgment On Count VI (Malicious Prosecution) Because No Reasonable Person Could Find That Plaintiff Punched Defendant Alvarez In The Face**

The elements of malicious prosecution are "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceeding in favor of the plaintiff." *Candelero v. Cole*, 152 Md. App. 190, 199, 831 A.2d 495, 500 (2003).

Here, there is no dispute that Defendant Peitzmeier wrote the Statement of Charges. Dkt. 55-2 at 10. This Court can take judicial notice that a Statement of Charges is a recognized method of instituting criminal charges in Maryland. See Md. Rule 4-202(b)(1)(B).

As to the second element, the lack of probable cause for Plaintiff's warrantless arrest is set forth herein. *See Supra* at 3-13. As to the third element, Defendant Peitzmeier's malice is demonstrated by the fact that he wrote an outright falsehood in the Statement of Charges:

namely, "Moore suddenly reached out and punched Ofc. Alvarez in the face." Dkt. 55-2 at 11. This assertion is squarely contradicted by the BWC.

In *Scott v. Harris*, the Supreme Court considered a denial of summary judgment where a "videotape quite clearly contradict[ed] the version of the story told by" the non-movant. 550 U.S. 372, 378 (2007). The Court held that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record," there is no genuine dispute of fact for the purposes of summary judgment. *Id*. 550 U.S. at 380. Where the non-movant's "version of events is so utterly discredited by the" videotape, courts "should … view[] the facts in the light depicted by the videotape." *Id*. 550 U.S. at 380-381.

This approach is consistent with prior Maryland cases. In *Walker v. State* the Court of Special Appeals reviewed video of an attack by a witness on a defendant in a trial court, and of the ensuing "fracas," all of which the trial judge had witnessed. The trial judge issued a closure order barring the defendant's family from the rest of the trial, based on her eyewitness account that they had disobeyed her orders during the fracas. While the trial "transcript contain[ed] the trial judge's post-event summary of what occurred, the videotape provide[d] the only contemporaneous account" of the events. 125 Md. App. at 924-925 (1999). The Court thus noted that, "this case pits the videotape . . . against the transcript" containing the judge's eyewitness account. *Id*. Significantly, in deciding whether the closure order was clearly erroneous, the Court applied a standard substantively identical to the summary judgment standard here. "In making this decision, we must assume the truth of all evidence, and of all the favorable inferences fairly deducible therefrom, tending to support the factual conclusions of the lower court." *Id*. 125 Md. App. at 54.

The Court "scrutinized the videotape and the transcript," comparing in detail the facts shown in the video against the eyewitness account on the record. *Id*. 125 Md. App. at 60. The

Court found that the video contradicted some of the judge's observations, *including those concerning the judge's own interaction with the defendant's family during the fracas. Id*. 125 Md. App. at 66.   The Court held that the actual facts were recorded on the video, not in the judge's eyewitness account.   *Id*. 125 Md. App. at 66-67.

In this case, the video footage clearly contradicts Defendant Peitzmeier's assertion that Mr. Moore punched Defendant Alvarez in the face. Defendant Peitzmeier's malice is further demonstrated by the fact that he never mentioned any officer struck Plaintiff in the face but instead wrote, "Moore's face made contact with the horizontal surface of the front steps of the above address, and as a result became bloody." Dkt. 55-2 at 11. Defendant Peitzmeier's statement and omissions are not accidental. It cannot be genuinely disputed that Plaintiff was punched in the face, yet Defendant Peitzmeier omitted this information from the charging document. Contrarily, he included information to mislead the reader that Plaintiff's injuries were from "making contact with" the steps instead of being repeatedly punched in the head.

As to the fourth element of there is no genuine dispute that Mr. Moore's criminal case was terminated in his favor via a *nolle prosequi*. Dkt. 55-2 at 14.

WHEREFORE Mr. Moore respectfully requests that this Court deny summary judgment on Counts I and II, and grant summary judgment in his favor on Count VI.

[THIS PORTION INTENTIONALLY LEFT BLANK]
[SIGNATURES ON NEXT PAGE]

Respectfully submitted,

**DOWNS COLLINS, P.A.**

_____/s/_____

Jason G. Downs, Esquire
Bar No.: 29575
20 S. Charles Street, Suite 901
Baltimore, Maryland 21201
O: (410) 462-4529
F: (410) 995-7200
Jason@downscollins.com
*Counsel for Plaintiff*


**THE FIRM, LLC**

_____/s/_____

Michael S. Barrett, Esquire
Bar No. 15809
6920 Braddock Road, Suite B620
Annandale, Virginia 22003
O: (703) 227-7157
F: (703) 997-2679
mike@thefirmllc.org
*Attorney for Plaintiff*


<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 29th day of July 2019, I caused a copy of the foregoing Plaintiff's Omnibus Memorandum of Law In Opposition to Defendants' Motion for Summary Judgment And In Support of Motion For Summary Judgment on Count VI to be served upon all counsel of record via the Court's ECF system.

/s/ Jason G. Downs
Jason G. Downs
*Counsel for Plaintiff*