# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHRISTOPHER MOORE,

    Plaintiff,

    v.

MICHAEL PEITZMEIER,                    Civil Action No. TDC-18-2151
JOSEPH ALVAREZ,
YVESDIDIER NKODIA and
NATHAN LENHART,

    Defendants.

## MEMORANDUM OPINION

Plaintiff Christopher Moore has filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights and state law tort claims arising from his arrest outside his apartment complex by Defendants Officers Michael Peitzmeier, Joseph Alvarez, Yvesdidier Nkodia, and Nathan Lenhart of the Montgomery County Police Department ("MCPD"). Pending before the Court are Defendants' Motion to Strike Plaintiff's Rule 26(a)(2)(C) Disclosures and Exclude Such Testimony at Trial, Defendants' Motion for Summary Judgment, and Moore's Motion for Summary Judgment. Having reviewed the filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion to Strike will be DENIED, Defendants' Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART, and Moore's Motion for Summary Judgment will be DENIED.

## BACKGROUND

On the evening of August 20, 2016, Plaintiff Christopher Moore took two Percocet pills. After taking the medication, he was called in to work at a bar. While at work, he learned that his

uncle had died. Moore began drinking alcohol, and at this point his memory of the evening and its events ends. His next memory is from a hospital visit some time the next morning.

At 4:38 a.m. on August 21, 2016, the residents of Apartment 21, 3902 Blackburn Lane, Montgomery County, Maryland called 911 and reported that a man was attempting to break into their apartment. The man had struck their door with such force that it was stuck partially open and would not close properly. MCPD Officers Michael Peitzmeier and Nathan Lenhart responded to the call. In the apartment building's stairwell, they discovered Moore locked in a scuffle with two men wearing security guard uniforms. The officers joined the fray in an attempt to get Moore under control, but he did not cooperate. In addition to yelling about his uncle's passing, he was also "struggling with and pulling away from" the group, despite being told to "stop fighting" multiple times. Joint Statement of Undisputed Facts ("JSUF") at 2, ECF No. 55-2. It took all four men to get Moore under control and eventually into handcuffs.

Once Moore was in handcuffs, Officers Peitzmeier and Lenhart investigated the disturbance. They learned that the security guards were not employed by the apartment complex but were instead Moore's co-workers who had taken him home from a bar where he had been causing a disturbance. Upon meeting with the residents of Apartment 21, the officers learned that Moore was apparently so intoxicated that he mistakenly believed Apartment 21 was his own residence and had broken the door trying to get into what he thought was his home. During this investigation, Moore was "yelling, growling, cursing, and jumping up and down," in addition to shouting about his uncle. *Id.* at 3. The officers eventually determined that Moore actually resided in Apartment 22. They knocked on the door of this unit, and Moore's wife answered.

Moore's wife, one of the security guards named Bang, and the officers discussed what to do with Moore. The officers stated that, in light of Moore's intoxication and his grief at his uncle's

passing, they thought it best to allow Moore to sleep off his intoxication in the apartment rather than to arrest him. Moore's wife expressed some reservation about allowing Moore into the apartment given his intoxicated state, noting that there were young children in the apartment, and suggested that he sleep in the hallway. After the officers warned that Moore would be arrested if they were called back to deal with any further disturbances or property destruction by Moore, and after Bang volunteered to stay with Moore in the apartment to ensure the family's safety, she agreed to allow him to enter. Satisfied that Moore would sleep it off in his apartment, the officers left. The encounter had lasted about 30 minutes.

Just 10 minutes later, however, the residents of Apartment 21 again called 911 and reported that the same man was outside their door, fighting other men in the hallway, and making verbal threats. Officer Peitzmeier, the first officer on the scene, discovered Moore, shirtless and shoeless, sitting on the front steps of the apartment complex with his head down. Moore was intermittently yelling incoherently. Officer Peitzmeier spoke to Moore, but Moore did not respond. Officer Joseph Alvarez was next to arrive, and Officer Peitzmeier told him that it was a "straight up 10-15," meaning that Moore needed to be placed in custody. JSUF at 6; Peitzmeier Body Camera Video ("Body-Cam") at 3:05-3:15, ECF No. 63. Officer Alvarez approached Moore, speaking to him but also receiving no response.

As Officer Alvarez reached down to touch Moore, Moore's head snapped up and he extended his arms toward Officer Alvarez while yelling "What? What?" Peitzmeier Body-Cam at 3:23-3:28. His left hand or arm made contact with Officer Alvarez's upper chest, and though Moore had not fully stood up, the contact caused Officer Alvarez to move back. Officer Alvarez responded by punching at Moore's face one or two times, knocking Moore onto his back against

the steps. Officer Peitzmeier attempted to restrain Moore and get him into handcuffs, but he did not punch Moore.

As the incident was unfolding, two more officers arrived on the scene. Officer Yvesdidier Nkodia ran forward and helped secure Moore by putting his right knee onto Moore's lower body. Officer Lenhart, who had been on the first call, ran forward and began punching Moore in the face. Lenhart Body-Cam at 1:30-1:50, ECF No. 63. Although Officer Lenhart has testified that he believed that Moore was continuing to resist and fight, Moore was lying on his back, against the steps, with his arms down. It appears from body camera video footage that Officer Lenhart delivered two blows to Moore's face while Moore's chest and neck were being held in place. This flurry of punches lasted only a few seconds.

The officers then rolled Moore onto his stomach and began attempting to handcuff him as he muttered several times, "Why'd you hit me, dog?" *Id.* at 1:40-1:55. Moore was bleeding from the head, with some of his blood pooling on the steps. As the officers continued to attempt to get Moore's hands behind his back—a task made more difficult by Moore's awkward position against the stairs—Moore told the officers that they were hurting his neck and assured them, "I'm not fighting you." *Id.* at 2:00-2:30. When Moore was finally in a position to be handcuffed, Officer Alvarez put his hand on the back of Moore's neck but released his hold once the handcuffing was complete. As a result of the injuries he suffered, Moore was taken by ambulance to a hospital, where he was treated for "an acute head injury, laceration of the eyebrow, abrasions, and neck strain." JSUF at 9.

Officer Peitzmeier completed an Incident Report and a Statement of Charges. In the Statement, he proposed charges of disorderly conduct, second-degree assault, and resisting arrest. Although Moore was later charged with these three offenses, the case was ultimately terminated

by *nolle prosequi*. Officer Peitzmeier later testified that he also believed that there was probable cause to arrest Moore for malicious destruction of property as well. Defendants have offered the testimony of MCPD Lieutenant Marc Erme, an expert witness, that there was probable cause to arrest Moore for disorderly conduct, assault on a police officer, resisting arrest, malicious prosecution, and attempted burglary. The expert has also testified that each officer's use of force was reasonable under the circumstances.

On July 16, 2018, Moore filed the present action. As narrowed by voluntary dismissal of certain defendants and claims, and by the Court's ruling on a Motion to Dismiss, Moore is presently alleging claims of unlawful seizure, excessive force, negligence, gross negligence, and battery against Officers Peitzmeier, Alvarez, Nkodia, and Lenhart, and a claim of malicious prosecution against Officer Peitzmeier only.

## DISCUSSION

### I. Motions for Summary Judgment

In their Motion for Summary Judgment, Defendants seek summary judgment on all six remaining counts on the grounds that their arrest of Moore was lawful, that the force they used against Moore was not excessive under the Fourth Amendment and did not constitute battery under Maryland law, that they were neither negligent nor grossly negligent in arresting Moore, and that Officer Peitzmeier's filing of the Statement of Charges against Moore did not constitute malicious prosecution.

In his Opposition to Defendants' Motion, Moore abandons his negligence and gross negligence claims, so the Court will enter summary judgment on those counts. In his Cross Motion for Summary Judgment, Moore seeks summary judgment in his favor on the malicious prosecution claim.

## A.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## B.    Unlawful Seizure

Moore first argues that he was arrested without probable cause in violation of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. With limited exceptions, an arrest is reasonable only if supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979). An officer has probable cause for an arrest when "facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)

(citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). As the term implies, probable cause involves "probabilities," the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Thus, probable cause requires more than mere suspicion, but less than proof beyond a reasonable doubt. *See Wong Sun v. United States*, 371 U.S. 471, 479 (1963). "The question to be answered is whether an objectively reasonable police officer, placed in the circumstance, had a 'reasonable ground for belief of guilt' that was 'particularized with respect to the person to be searched or seized.'" *United States v. Humphries*, 372 F.3d 653, 657-58 (4th Cir. 2004) (quoting *Maryland v. Pringle*, 540 U.S. 366, 372-73 (2003)). The arresting officer's belief need not be correct, or even more likely true than false, so long as it is reasonable. *Texas v. Brown*, 460 U.S. 730, 742 (1983). Furthermore, the officer's subjective motivations for making the arrest are immaterial. *Whren v. United States*, 517 U.S. 806, 813 (1996).

"Because the probable cause inquiry is informed by the contours of the offense at issue," the Court must look to Maryland law "in determining the scope of the offense." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019). The Statement of Charges filed after Moore's arrest identified three separate charges: disorderly conduct, second-degree assault, and resisting arrest. Officer Peitzmeier, who filed the Statement, has since testified that there was also probable cause to arrest Moore for malicious destruction of property. While courts may consider whether probable cause to arrest existed for crimes other than those charged at the time of arrest, *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004), in this instance the Court need not do so, for it finds that there was probable cause to arrest Moore for disorderly conduct and assault.

Maryland law criminalizes several versions of disorderly conduct. The version with which Moore was charged provides that "a person may not willfully act in a disorderly manner that

disturbs the public peace." Md. Code Ann., Crim. Law § 10-201(c)(2) (LexisNexis 2012). "[T]he gist of the crime of disorderly conduct . . . is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area." *Spry v. State*, 914 A.2d 1182, 1187-88 (Md. 2007) (citation omitted). The person need not "act for the purpose of disturbing the public peace." *Dziekonski v. State*, 732 A.2d 367, 372 (Md. Ct. Spec. App. 1999). "The effect of the actor's conduct need only be that the peace was disturbed." *Id.*

Moore's conduct satisfies this definition. It is undisputed that after he attempted to break down a neighbor's apartment door, Moore was found by the police yelling repeatedly in the middle of the night in an apartment complex in a manner that could fairly be construed to disturb, at a minimum, the residents in Apartment 21. The Court of Appeals of Maryland has held that, under the predecessor to the current disorderly conduct statute, a defendant is "properly convicted of a violation of the statute" where the defendant's yelling was "unreasonably loud under the circumstances—among those circumstances being the fact that the noise produced by [the defendant] unreasonably disturbed members of a captive audience who were entitled to be free of that sort of disturbance." *Eanes v. State*, 569 A.2d 604, 618-20 (Md. 1990). Moore was also involved in a physical struggle with two other men when the police arrived and, despite the officers' orders, he continued to yell loudly, try to pull away from the others, and resist being controlled to the point that four men had to physically restrain him. Such actions can also support a conviction for disorderly conduct. In *Streeter v. State*, 248 A.2d 119 (Md. Ct. Spec. App. 1968), for example, the court upheld a conviction for disorderly conduct where the defendant, while intoxicated, repeatedly refused requests to leave a restaurant at closing time, demanded to be served despite his inability to pay for his food, and, when a policeman entered the restaurant, tried to slip a table knife into his pocket. *Id.* at 120-21. In holding that there was sufficient evidence

for the conviction, the court pointed to the fact that the defendant's belligerent behavior "could have precipitated a melee" and the fact that the defendant's behavior did not cease when a policeman arrived. *Id.* at 121. Here, Moore's behavior was belligerent, actually did precipitate a physical struggle, and did not end when the officers appeared and sought to restrain him. Thus, Moore's physical conduct, in addition to his yelling, gave the officers probable cause to arrest Moore for disorderly conduct.

Moore, however, argues that none of this conduct may be considered in determining whether there was probable cause to arrest him for disorderly conduct because "[w]arrantless misdemeanor arrests must be made during one transaction unless there is an objectively necessary reason for a delay." Pl.'s Opp'n Mot. Summ. J. at 11, ECF No. 56-1. According to Moore, because there was no such reason for the officers to delay arresting Moore for the misdemeanor of disorderly conduct when they first left the scene, arresting him during the second call based on his conduct during the first call would be unlawful. Consequently, Moore argues that the existence of probable cause for an arrest for disorderly conduct may be judged based only on his actions during the officers' second visit to the apartment complex.

In *Torres v. State*, 807 A.2d 780 (Md. Ct. Spec. App. 2002), cited by Moore, the court held that a police officer may conduct a warrantless arrest on a misdemeanor charge only if the crime was "committed in his presence or view," and only "if the arrest is made with reasonable promptness after the offense." *Id.* at 781-82. Yet in *Torres*, there was a delay of 13 days between the criminal conduct observed by the police officer and the arrest, *id.* at 789, as opposed to the mere 10 minutes that passed between the first and second encounters between Moore and the police in the present case. Though in *Torres* the court noted that it had "found no case that applied the reasonable promptness rule [and] found a warrantless misdemeanor arrest valid where the delay

exceeded one hour," the 10-minute delay falls safely within the requirement of "reasonable promptness." *Torres*, 807 A.2d at 789. Notably, the Court of Appeals of Maryland has since clarified the "reasonable promptness rule" by stating that "[t]he discretionary aspect of a law enforcement officer's authority when arresting without a warrant at the scene of a misdemeanor . . . is limited ordinarily only by a need for the arrest to be effectuated in 'due time.'" *Spry*, 914 A.2d at 1189. There, the court stated that a two-day delay between a misdemeanor and a resulting warrantless arrest "may or may not have implicated the issue of delay." *Id.* By contrast, an arrest made 10 minutes after the observed criminal conduct is safely made in "due time," such that the officers could have lawfully arrested Moore for disorderly conduct during the second call on the basis of conduct that occurred during the first call. *See id.* Where that conduct provided probable cause that Moore had engaged in disorderly conduct, Moore's unlawful seizure claim fails.

Even if that were not the case, summary judgment would still be warranted on this count because there was also probable cause to arrest Moore for an assault upon Officer Alvarez. Under Maryland criminal law, "[a] person may not commit an assault," Md. Code Ann., Crim. Law § 3-203(a), which is defined as "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." *Id.* at § 3-201(b). The judicially determined meaning of battery involves "causing offensive physical contact with another person." *Nicolas v. State*, 44 A.3d 396, 406-07 (Md. 2012). Here, the body camera footage shows Moore causing offensive physical contact with Officer Alvarez. As Officer Alvarez leaned down toward Moore, Moore swung his right arm toward Officer Alvarez and pushed his left arm against Officer Alvarez's upper torso, causing him to move back. To be sure, not every push or contact is offensive. *See Nicolas*, 44 A.3d at 412 ("[A] reasonable jury could have determined, for instance, that the brush or push did not constitute offensive physical contact or that the contact was accidental"). Indeed,

Moore identifies at least one unpublished case in which the Maryland Court of Special Appeals held that "merely swatting away the officer's hands . . . do[es] not rise to the level of statutory second-degree assault." *In re Q.M.*, No. 23-J-16-000110, 2017 WL 4075169, *6 (Md. Ct. Spec. App. Sept. 14, 2017). Here, however, the body camera video reveals that Moore's push to Officer Alvarez's chest went beyond such a limited action. Moreover, Defendants need not prove beyond a reasonable doubt that Moore actually committed an assault; they need only establish that there was probable cause to arrest Moore for committing an assault. Judged against this lower standard, the evidence establishes that Defendants had probable cause to arrest Moore for assault. *Wilkes v. Young*, 28 F.3d 1362, 1370 (4th Cir. 1994) ("[T]he quantum of evidence required to establish probable cause is of course less than that required to establish guilt beyond a reasonable doubt . . . .") (citation omitted); *see Leatherberry v. State*, 242 A.2d 599, 602 (Md. Ct. Spec. App. 1968) (holding that there was probable cause to arrest an individual who had pushed a police officer).

Because the Court concludes that there was probable cause to arrest Moore for disorderly conduct and assault, it need not now address Defendants' further contentions that there was also probable cause to arrest Moore for resisting arrest and malicious destruction of property, or that they are entitled to qualified immunity on this count. The Court will grant summary judgment in favor of Defendants on the unlawful seizure count.

## C. Excessive Force

Moore also claims that Officers Peitzmeier, Alvarez, Nkodia, and Lenhart violated the Fourth Amendment by using excessive force in arresting him. Defendants move for summary judgment on this count, arguing that their use of force was objectively reasonable and that, even if it was not, they are nevertheless entitled to qualified immunity.

11

### 1. Fourth Amendment

A claim of excessive force used during an arrest invokes the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To assess whether the force used was reasonable and not excessive, a court must balance the governmental interests and "the nature and quality of the intrusion on the individual's Fourth Amendment interests." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The test is an objective one: whether the officer's actions are objectively reasonable under the facts and circumstances, recognizing that officers often must make "split-second judgments." *Id.* at 397. Relevant considerations include the seriousness of the crime, whether the individual poses an immediate threat to the safety of others, and whether the individual is actively resisting or attempting to evade arrest. *Id.* at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," will rise to a Fourth Amendment violation. *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Notably, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Nevertheless, even if an initial use of force is reasonable, "the repeated use of force may be constitutionally excessive if circumstances change in a material way." *Harris v. Pittman*, 927 F.3d 266, 268-69 (4th Cir. 2019).

In a civil action for damages, the question of whether a defendant used excessive force, and the specific question of whether the force used was reasonable, is a mixed question of law and fact properly submitted to the jury when "there are disputed issues of material fact" or where "there is room for a difference of opinion." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253 (10th Cir. 2013); *cf. Padula v. Leimbach*, 656 F.3d 595, 601 (7th Cir. 2011) (holding that, in wrongful arrest cases brought under § 1983, "[t]he probable cause determination must be made by a jury if

there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them" (quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008))); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 998 (6th Cir. 1994) ("[I]n a civil damage suit, whether exigent circumstances existed to excuse a warrantless arrest is a question for the jury provided that, given the evidence on the matter, there is room for a difference of opinion."). Here, the record before the Court consists of only a joint statement of undisputed facts and body camera recordings from two of the officers. Since Moore had no recollection of the events of the evening in question, there are no dueling affidavits with conflicting accounts. If the facts are undisputed, or if there is video evidence that conclusively establishes the relevant facts and supports only one conclusion, summary judgment may be granted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

On this record, the first *Graham* factor, the seriousness of the offense, weighs in favor of Moore. The primary offenses drawing the police officers to the apartment complex, disorderly conduct and malicious destruction of property, are misdemeanors. Although Moore was under the influence of drugs or alcohol and was hard to control, there was no evidence that he was intentionally seeking to physically harm anyone during the first encounter. Indeed, the officers had determined during the first encounter that the damage he caused to the door of Apartment 21 was based on a mistaken belief that it was the door to his unit, not an intent to break into and enter someone else's residence. *See, e.g.*, *Hupp*, 931 F.3d at 322 (treating the misdemeanor classification of the crime for which plaintiff was arrested as establishing that the crime was "a minor one," thus shifting the first *Graham* factor in plaintiff's favor). Although the assault on Officer Alvarez immediately before the arrest could qualify as a felony, *see* Md. Code Ann., Crim. Law § 3-203(c), where Moore was not armed and had only momentary contact with Officer

Alvarez, the offenses at issue are of limited seriousness, particularly when compared with violent or drug trafficking offenses.

The second and third factors—whether the "suspect pose[d] an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396—justify the use of a certain amount of force. When Defendants approached Moore during the second encounter, he was sitting on the steps, unarmed and shirtless, and was not at that moment engaged in any threatening behavior. However, once Officer Alvarez approached him, Moore made a sudden movement directed toward Officer Alvarez and appears to have struck him in the upper chest. In addition, Defendants were aware, either from their involvement in the first encounter or from information shared with them, that during the earlier episode Moore had resisted police efforts to control him. Thus, after Moore lunged toward Officer Alvarez, Defendants were justified in using some force to address the possible threat.

Notably, however, the threat Moore presented to the officers dissipated as quickly as it had arisen. After his initial movement toward Officer Alvarez, Moore does not appear to have taken any other threatening actions toward the officers. Rather, he was quickly and immediately taken and held down by several officers. There was no sign that Moore was armed. As for active resistance or attempts to flee, before he was tackled, Moore could not have disobeyed or resisted a police order because no such order was given. Up to that point, Officers Peitzmeier and Alvarez had attempted only to engage in normal conversation with Moore and had not directed him to do anything. Although Officer Lenhart has testified that Moore continued to resist arrest after he punched him for the first time, the only specific failure to obey a direct order came later, after Moore was rolled on his stomach, and the officers demanded that Moore give them his arms.

14

Although Moore said several times, "I'm not fighting you" and complained about his neck, he did not present his arms as directed, perhaps because they were wedged beneath him against the stairs.

Under these circumstances, Defendants were entitled to use some amount of force, but the amount of such force was constrained by the magnitude of the threat or resistance that Moore presented. *See Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016) (holding that where the plaintiff presented some risk of flight, the degree of force officers were justified in using was "the degree reasonably calculated to prevent [plaintiff's] flight"); *see also id.* ("Noncompliance with lawful orders justifies some use of force, but the level of justified forced varies based on the risks posed by the resistance.").

Through this proportional lens, the undisputed evidence, particularly the video recordings, establish that most of the force Defendants applied was objectively reasonable. Officer Nkodia only "put his right knee on Plaintiff's lower body because Plaintiff was moving around." JSUF at 9. He "did not punch Plaintiff." *Id.* Officer Peitzmeier likewise did not strike Moore, instead focusing on restraining him and gaining control over his arms to handcuff him. These exercises of force were objectively reasonable. *See Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) ("An efficient, lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force."); *Estate of Armstrong*, 810 F.3d at 907 n.11 ("Applying just enough weight to immobilize an individual continu[ing] to struggle during handcuffing is not excessive force.") (citation omitted).

Officer Alvarez's use of force, while greater than that deployed by Officers Nkodia and Peitzmeier, was also objectively reasonable. To be sure, punching a suspect in the head, as Officer Alvarez did here, can be deemed serious enough to constitute excessive force. *See, e.g., Thomas v. Holly*, 533 F. App'x 208, 218-19 (4th Cir. 2013) (holding that "punching Plaintiff four or five

times in the back of the head with a closed fist and with great force in an effort to arrest him" was objectively unreasonable). However, Officer Alvarez punched Moore at the moment that Moore posed the greatest threat, immediately after Moore had swiped at his chest and yelled at him and before Officer Alvarez and the other officers had subdued Moore. In similar circumstances, the United States Court of Appeals for the Fourth Circuit has held that an even greater use of force was objectively reasonable. In *Meyers v. Baltimore County, Maryland*, 713 F.3d 723 (4th Cir. 2013), the court held that tasing the plaintiff three times did not constitute excessive force when the plaintiff "was acting erratically, was holding a baseball bat that he did not relinquish until after he received the second shock, and was advancing toward the officers until the third shock caused him to fall to the ground." *Id.* at 733. While Moore presented less of a threat than the plaintiff in *Meyers*, Officer Alvarez also used less extreme force than the officer in *Meyers*. Officer Alvarez's one or two punches, then, were an objectively reasonable use of force. To the extent Moore's claim of excessive force against Officer Alvarez rests on these punches, the Court will grant summary judgment to Officer Alvarez.

Moore further claims that Officer Alvarez and others used excessive force by pushing his face into the concrete steps and pressing down on his neck. The body camera footage shows that after being taken down, Moore ended up face down, with his head in the area where a step met a concrete wall, and began repeatedly shouting "my neck." Lenhart Body-Cam at 2:00-2:30. However, the footage does not show anyone pressing his head into the ground, and Officer Alvarez's hold on Moore's neck was limited to the time period when other officers were handcuffing Moore. Officer Alvarez stopped holding Moore's neck once Moore was handcuffed, and made no attempt to hold him down again.

In *Pegg*, the Fourth Circuit held that a similar use of force was objectively reasonable. 845 F.3d at 120. There, after an arrestee tried to yank one of his hands out of the arresting officer's grasp, the officer took the arrestee to the ground, where he and another officer "pinned [the arrestee] and handcuffed him." *Id.* at 116. Like Officer Alvarez, the arresting officer pinned the arrestee "no longer than the time [the officer] needed to handcuff him," after which point the officer "refrained from any further physical contact." *Id.* at 120. Because Officer Alvarez, like the arresting officer in *Pegg*, used an objectively reasonable amount of force in holding down Moore's neck to facilitate handcuffing him, the Court will also grant summary judgment to him on this aspect of Moore's claim.

These determinations, however, do not necessitate a grant of summary judgment to the other officer who punched Moore, Officer Lenhart. "[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) (citation omitted). In *Meyers*, for example, the court held that even though the three initial tasings were objectively reasonable, the seven subsequent tasings were objectively unreasonable when the plaintiff "fell to the floor," officers sat on his back, he "no longer was actively resisting arrest," and he "did not pose a continuing threat to the officers' safety." *Meyers*, 713 F.3d at 733-34. In *Waterman*, the court held that officers were not objectively unreasonable in firing at a vehicle bearing down on them, but also that a reasonable factfinder could have found that the officers were unreasonable in continuing to fire at the vehicle after it had passed them. 393 F.3d at 482.

Here, taking the facts in the light most favorable to Moore, the evidence in the record does not definitively establish that Officer Lenhart's three punches to Moore's head were objectively reasonable. Although Officer Lenhart has testified that Moore was continuing to resist at the time

17

that he punched Moore, the video evidence does not appear to corroborate his account on this point. One video, Officer Lenhart's body camera video, appears to show that by the time Officer Lenhart punched Moore, he had already been taken down by other officers and had been knocked on his back, against the stairs. Where the video appears to show that Moore was on his back, being held down by multiple officers, and with his head not moving at the time that Officer Lenhart struck him for the second and third times, a reasonable jury could conclude that Moore no longer posed a threat to the officers at that time. Although the officers testified that Moore resisted arrest in that he failed to present his arms to be handcuffed, any such resistance would not justify Officer Lenhart's multiple punches to Moore's head because the punches occurred before Moore was ordered to submit his arms for handcuffing.

Under such circumstances, a reasonable jury could find that Officer Lenhart's use of force was unreasonable. In *Thomas*, officers responded to a report of individuals damaging property and encountered the plaintiff, who was acting erratically and told them, "I have lost my mind." *533* F. App'x at 212. Although the Fourth Circuit held that officers acted reasonably in tasing the unarmed plaintiff multiple times, it concluded that once he was subdued and was pinned down by multiple officers, a detective who then punched him multiple times in the head acted in an objectively unreasonable manner. *Id.* at 218-19. *See also Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003) (holding that, where the plaintiff was drunk, unarmed, and handcuffed in a police station, a reasonable jury could find that he did not pose a serious threat and that an officer who "knocked [him] to the floor and then jumped on him" had used excessive force). Similarly, in *Baker v. City of Hamilton*, 471 F.3d 601 (6th Cir. 2006), the court held that, where there was evidence that the arrestee "was unarmed, was compliant, and was not a significant threat to Officer Taylor's safety," a reasonable factfinder could conclude that "Officer Taylor's strike to [the

18

arrestee's] head was unwarranted and unreasonably severe." *Id.* at 607. Here, where the video evidence does not illustrate resistance by Moore at the time that Officer Lenhart punched Moore in the head, at least as to the second and third punches, a reasonable factfinder could conclude that these subsequent punches to Moore's face were unreasonable and excessive under the circumstances.

At a minimum, the video evidence provides "room for a difference of opinion" that precludes summary judgment at this time. *Cavanaugh*, 718 F.3d at 1253; *see Waterman*, 393 F.3d at 482 (finding that a reasonable jury could find that officers' firing of shots continued after they no longer faced an imminent threat of serious harm). Moreover, the video evidence depicts the incident from only certain angles and viewpoints, such that there remains a genuine issue of material fact on whether at the time of the second and third punches, Moore was continuing to resist in a manner that presented a threat that would justify multiple blows to his head. *See Thomas*, 533 F. App'x at 218-19. Notably, additional evidence not currently available to the Court could be presented to a jury at trial. Although the parties have jointly agreed that Officer Lenhart would testify that at the time of the punches, he believed Moore to be continuing to resist and to present a threat, and that Defendants' use of force expert would testify that Officer Lenhart acted reasonably, Moore has not conceded that such testimony is accurate or credible. Beyond having an opportunity to review the videos and assess the credibility of these witnesses during live testimony, a jury would also likely have evidence of Moore's injuries, through medical records or other evidence, to shed further light on the reasonableness of Officer Lenhart's actions. *See, e.g.*, *Pressly v. Gregory*, 831 F.2d 514, 518 (4th Cir. 1987) (rejecting an excessive force claim in part based on the medical evidence relating to the plaintiff's alleged injuries). The Court will therefore deny summary judgment to Officer Lenhart on the excessive force claim.

Finally, Moore asserts that Officers Peitzmeier and Nkodia could still be held liable as aiders and abettors of excessive force committed by other officers. An individual may be held liable for a tort if that person, "by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967). The aider or abettor must have taken this action "knowing that the . . . tortious[] act would be the natural consequence of his conduct." *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. 2003). In addition, and more fundamentally, there must be both a direct perpetrator of the tort and an underlying tortious activity. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1050 (Md. 1995).

This final requirement precludes a finding that Officers Peitzmeier and Nkodia aided and abetted Officer Alvarez because, as discussed above, the Court will grant summary judgment to Officer Alvarez on the excessive force claims against him. As for Officer Lenhart, the evidence does not support a finding that the other officers encouraged, incited, or aided him as he punched Moore. The body camera footage, which includes audio, reveals no evidence that the officers approached Moore with a plan to engage in excessive force; rather, the officers' discussion prior to the arrest related only to the need to arrest Moore. During the arrest, no officers made statements encouraging others to punch Moore. Moreover, the rapidity with which the events unfolded—confirmed by the videos—precludes a finding that Officers Peitzmeier and Nkodia realized that in the few seconds when they were justifiably holding down Moore after he assaulted Officer Alvarez, the natural consequence would be that Officer Lenhart would punch Moore in the face after he was subdued. Indeed, Officers Peitzmeier and Nkodia provided undisputed testimony that they were unable to see what the other officers were doing during the arrest. Where Moore has failed to identify evidence showing that Officers Peitzmeier and Nkodia encouraged or incited

excessive force, or restrained Moore with the knowledge that their actions would lead to excessive force, the Court will grant summary judgment to Defendants on the aiding and abetting theory of liability.

## 2. Qualified Immunity

In addition to arguing that the force employed was objectively reasonable, Defendants offer the additional argument that, even if it was unreasonable, they are nevertheless entitled to summary judgment on the excessive force claim based on qualified immunity. Because the Court has already granted summary judgment to Officers Alvarez, Peitzmeier, and Nkodia on the excessive force claim, it need only address whether Officer Lenhart is entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Henry v. Purnell*, 501 F.3d 374, 376-77 (4th Cir. 2007). When qualified immunity is asserted, a court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right; and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Henry*, 501 F.3d at 377. For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377. Courts may address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As the Court has denied summary judgment to Officer Lenhart on Moore's claim under the Fourth Amendment for excessive force during his arrest, the Court next considers whether Moore's right to be free from such force was "clearly established" at the time of the incident. *See Harlow*, 457 U.S. at 818.

In determining whether a right is "clearly established," the Court considers whether "the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right" and was thus "on notice" that the conduct violated established law. *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018). Even if no court has found that the specific conduct in question violated an individual's rights, "if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question," the right may be clearly established. *Id.* However, "courts must not 'define clearly established law at a high level of generality.'" *Id.* (citations omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). The Court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552; *Safar v. Tingle*, 859 F.3d 241, 246 (4th Cir. 2017). Although the facts of such a case need not be "identical" to the present facts, *Safar*, 859 F.3d at 248, it should be "obvious" that the case applies to the facts, *White*, 137 S. Ct. at 552.

In assessing this question, a court "first examines 'cases of controlling authority in [this] jurisdiction,'" here, the Supreme Court, the Fourth Circuit, and the Court of Appeals of Maryland. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)). If that authority is not dispositive, the Court may still consider "'a consensus of cases of persuasive authority' from other jurisdictions" as a basis to find that conduct was barred by clearly established law. *Booker*, 855 F.3d at 539 (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). When considering whether there is such a "consensus," a court considers not only the broad holdings of those cases but also the specific requirements adopted by each court. *See Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004).

Here, there is controlling precedent holding that assaulting an unarmed, subdued suspect or arrestee violates the Fourth Amendment. In *Kane v. Hargis*, 987 F.2d 1005 (4th Cir. 1993) (per curiam), the court held that even where the arrestee was suspected of a crime, had been resisting arrest, and was not yet handcuffed, the fact that the arrestee posed no threat to the officer made his decision to "push her face into the pavement with such force that her teeth cracked" unreasonable. *Id.* at 1008. In *Jones*, the Fourth Circuit stated that courts "have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." *Jones*, 325 F.3d at 532. It went on to deny qualified immunity to the police officer in that case who had, taking the facts in the light most favorable to the plaintiff, knocked down and jumped on top of an unarmed, handcuffed individual. *Id.* Although Defendants attempt to distinguish *Jones* on the basis that there the *Graham* factors were more favorable to the plaintiff, such subtle factual distinctions do not change the legal principle established by the Fourth Circuit. In conjunction with cases from a number of other circuits that have held that using additional force after the arrestee no longer poses a threat is unreasonable, *see Jones*, 325 F.3d at 533-34 (collecting cases), these cases illustrate that at the time of Moore's arrest, it was clearly established that striking an arrestee who was already under control violates the Fourth Amendment. Consequently, the Court will deny qualified immunity to Officer Lenhart.

### D. Battery

Moore also asserts a claim of battery against all Defendants based on the same facts supporting his excessive force claims, and Defendants have moved for summary judgment on that claim. Under Maryland law, battery is the "unlawful application of force to the person of another." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991). An officer is not liable for battery,

23

however, for using a reasonable amount of force when effectuating a lawful detention or arrest. *See Ashton v. Brown*, 660 A.2d 447, 471 n.24 (Md. 1995); *Busch v. State*, 426 A.2d 954, 958 (Md. 1981); *Hines v. French*, 852 A.2d 1047, 1055-56 (Md. Ct. Spec. App. 2004) (holding that officers were entitled to judgment as a matter of law on claims of battery, false imprisonment, and false arrest where they had legal justification to arrest the plaintiff). Because the Court has granted summary judgment to Officers Peitzmeier, Alvarez, and Nkodia with respect to Moore's excessive force claim, it will also grant them summary judgment as to Moore's battery claim. Conversely, because the Court has found that there is a genuine issue of material fact whether Officer Lenhart used excessive force and accordingly denied summary judgment on the excessive force claim against him, it will likewise deny summary judgment to Officer Lenhart on the battery claim.

### E.    Malicious Prosecution

Moore has asserted a claim of malicious prosecution against Officer Peitzmeier only. Both Officer Peitzmeier and Moore seek summary judgment on this claim. The elements of malicious prosecution are "(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice." *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000). The first two elements are not in dispute here: Officer Peitzmeier filed a Statement of Charges against Moore after the arrest that included disorderly conduct, second-degree assault, and resisting arrest, and these charges were all abandoned through a *nolle prosequi*. The parties dispute, however, whether there was probable cause to bring these charges and whether there is evidence of malice on the part of Officer Peitzmeier. Both elements are required to establish malicious prosecution.

*Walker v. American Sec. & Trust Co. of Wash., D.C.*, 205 A.2d 302, 308 (Md. 1964) ("There must be both malice and a want of probable cause to maintain an action for malicious use of process."). As discussed above, the Court has found that there was probable cause to arrest Moore for disorderly conduct and assault, such that he may not maintain claims of malicious prosecution based on these charges.

The Court does not find at this juncture, however, that no reasonable jury could find a lack of probable cause to arrest Moore for resisting arrest. In Maryland, resisting arrest is a statutorily enacted misdemeanor offense. Md. Code Ann., Crim. Law § 9-408(b) ("A person may not intentionally . . . resist a lawful arrest."). The elements of the Maryland offense of resisting arrest are that (1) a law enforcement officer attempted to arrest the defendant; (2) the defendant knew that a law enforcement officer was attempting to make an arrest; and (3) the defendant refused to submit to the arrest and resisted by force." *United States v. Aparicio-Soria*, 740 F.3d 152, 155 (4th Cir. 2014). The force requirement contained in the third element requires that the defendant engage in "offensive physical contact" against another in the course of resisting arrest. *Nicolas v. State*, 44 A.3d 396, 409 (Md. 2012); *Rich v. State*, 44 A.3d 1063, 1077 (Md. Ct. Spec. App. 2012). Moore's initial shove of Officer Alvarez cannot constitute the necessary force because at that point Moore had not been informed that he was going to be arrested. Defendants had asked general questions of him, such as "You O.K.?" and "What's the word, man?," but did not tell him that they were going to arrest him. Peitzmeier Body-Cam at 1:35-1:40, 3:10-3:20. While Officer Peitzmeier has testified that he believed there was probable cause to arrest Moore for resisting arrest based on Moore's subsequent "withholding of his arms" and failure to present them for handcuffing, JSUF at 7, such an action does not constitute a use of force. Indeed, the body camera footage does not show that Moore used force while refusing to give up his arms. Based on this evidence, a

25

reasonable jury could conclude that Moore used no force. such that there was no probable cause to charge him with resisting arrest. *See Padula*, 656 F.3d at 601 (stating that the determination of whether there was probable cause for an arrest must be made by a jury if there was "room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them").

As for the element of malice, "if the jury is permitted under the evidence . . . to find a lack of probable cause, . . . it may also, if it chooses, infer the existence of malice." *Exxon Corp. v. Kelly*, 381 A.2d 1146, 1153 (Md. 1978). Particularly where Moore had disobeyed orders issued during the first call, and Officer Peitzmeier observed Moore strike Officer Alvarez, the Court cannot foreclose a finding of malice. Because a reasonable jury could find that all the elements of malicious prosecution were met, the Court will deny summary judgment to Officer Peitzmeier as to the malicious prosecution claim relating to the resisting arrest charge. *Equal Emp't Opportunity Comm'n v. McLeod Health, Inc.*, 914 F.3d 876, 880 (4th Cir. 2019) (citation omitted) ("[I]f the evidence would permit a jury to find in the non-movant's favor on a disputed question of material fact, summary judgment is inappropriate."). Likewise, because the question of malice is properly a jury question, *Exxon Corp.*, 381 A.2d at 1152, the Court will also deny Moore's Motion for Partial Summary Judgment as to this count.

## II.    Motion to Strike

Because some of Moore's claims continue beyond the summary judgment stage, the Court must also resolve Defendants' Motion to Strike Plaintiff's Rule 26(a)(2)(C) Disclosures and Exclude Such Testimony at Trial, *see* ECF No. 46, which arises out of Moore's allegedly untimely and inadequate disclosure of the physicians he intends to call at trial as expert witnesses.

Federal Rule of Civil Procedure 26(a)(2) sets out the requirements for a party to disclose "the identity of any witness it may use at trial to present" expert evidence.  Fed. R. Civ. P.

26

26(a)(2)(A). The specific requirements for disclosing witnesses who, like the treating physicians at issue here, are not "retained or specially employed to provide expert witness testimony in the case," are provided in Rule 26(a)(2)(C). Fed. R. Civ. P. 26(a)(2)(B)-(C); *see also Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997) ("[A] treating physician is the quintessential example of a hybrid witness for whom no Rule 26(a)(2)(B) disclosures are required . . . ."). In particular, the party intending to call these witnesses must provide "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Moreover, this disclosure must be provided "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Here, Moore's Rule 26(a)(2)(C) disclosures were plainly late. The Court's Amended Scheduling Order required Moore's Rule 26(a)(2) disclosures be submitted by February 4, 2019. *See* Nov. 7, 2018 Marginal Order, ECF No. 26. However, Moore failed to submit these disclosures until May 14, 2019, over three months after the Court's deadline. Moore's arguments that he nevertheless substantially complied with Rule 26(a)(2)(C) are unavailing. While Moore claims that Defendants have been aware of the fact that Moore received medical treatment since the night of his arrest, this knowledge does not include the identity of Moore's treating doctors and the facts and opinions to which they plan to testify. Nor can Moore's March 1, 2019 disclosure cure his failure to comply: in response to an interrogatory demanding "all liability and damages experts whom you propose to call as witnesses," Moore simply answered, "Please see attached medical records produced under FRCP 33(d). Plaintiff plans to call the treating physicians as expert witnesses in this matter." Pl.'s Answers to Def. Alvarez's Interrogatories at 2, Mot. Strike Ex. 2, ECF No. 46-2. However, there were "[a]pproximately 20 providers" noted in the referenced medical records, Mot. Strike at 4, meaning that it was unclear which physicians Moore actually

intended to call. Moreover, this reference included no information as to the facts and opinions to which the physicians intended to testify. Finally, this inadequate disclosure was nearly a month late.

Rule 37 sets out the proper sanctions for failures to disclose required information. In particular, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In assessing whether either of these circumstances is present, district courts are to "be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The last of these factors "relates primarily to the substantial justification exception," while the first four "relate mainly the harmlessness exception." *Id.* However, while the *Southern States* court was admirably clear in its exposition of the relevant factors, the Fourth Circuit has since held that district courts need not "tick through each of the *Southern States* factors." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

Guided by these factors, the Court finds that Moore's failure to disclose expert witnesses was harmless. Moore's failure to properly disclose the identity of his treating physicians did not leave Defendants unfairly surprised, and to the extent there was surprise, they had the ability to cure that surprise. On the one hand, a court may admit evidence that a party failed to disclose adequately where the other party knew that the issue to which the evidence related "was a central

issue in the case." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 193 (4th Cir. 2017). On the other hand, a court may exclude undisclosed evidence that "presented an entirely new factual basis" for the offering party's defense. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 397-98 (4th Cir. 2014). Moore's Rule 26(a)(2)(C) disclosure more closely aligns with the former case than the latter. Defendants had been on notice since the filing of the Complaint that Moore was alleging that his interaction with Defendants had given rise to various medical issues, including "acute stress disorder, bruises, swelling and lacerations to the face, neck and spinal injuries." Compl. at ¶ 26, ECF No. 1. And since March 1, 2019—admittedly after the disclosure deadline—Defendants have been aware that Moore planned to call his treating physicians and had access to the medical records relating to those treating physicians. In light of this information, Defendants should not have been unduly surprised by Moore's Rule 26(a)(2)(C) disclosures.

Moreover, Defendants had an opportunity to cure their surprise. After Defendants communicated that they believed Moore's Rule 26(a)(2)(C) disclosures to be inadequate, Moore's counsel asked whether Defendants were seeking to depose the treating physicians and suggested that they could reach an agreed-upon solution. Defendants, however, demurred and instead responded that they would be filing a motion to strike. As Moore points out, the Fourth Circuit has treated such a failure to depose as weighing in favor of the curability of a violation. *See Bresler*, 855 F.3d at 194 ("Wilmington did not seek to depose Pugh or to take any other steps to mitigate the purported surprise caused by the plaintiffs' delayed disclosure . . . ."). Defendants attempt to distinguish *Bresler* on the ground that in that case the proponent of the disputed exhibit had properly filed an expert designation and report, while here Moore did not. This distinction merely differentiates the two cases as to how the proponent violated Rule 26(a)(2)(C). It does not

make any less significant Defendants' failure to request depositions of the treating physicians when offered. In light of this failure, the Court finds this factor to weigh in Moore's favor as well.

The final two factors relating to the harmlessness of the failure to disclose also weigh in favor of Moore. Allowing Moore's treating physicians to testify—and allowing them to be deposed beforehand—will not disrupt the trial in this case, as the trial has not yet been scheduled. Moreover, as Moore notes, the evidence at issue is "critical in that it provides the basis for Plaintiff's claim for damages." Pl.'s Opp'n Mot. Strike at 8, ECF No. 47. As discussed above, it may also be relevant on the issue of liability. *See supra* Part I.C.1. Because these factors all weigh in favor of Moore, the Court declines to exclude testimony from the treating physicians referenced in Moore's Rule 26(a)(2)(C) disclosure.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 55, will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to all Defendants on the unlawful seizure, negligence, and gross negligence counts; as to Officers Peitzmeier, Nkodia, and Alvarez with respect to the excessive force and battery counts; and as to Officer Peitzmeier with respect to the malicious prosecution count to the extent it relates to the disorderly conduct and assault charges. The Motion will be denied as to the excessive force and battery counts against Officer Lenhart and the malicious prosecution count against Officer Peitzmeier as it relates to the resisting arrest charge. Because all claims against Officers Alvarez and Nkodia will be dismissed, they will be DISMISSED as defendants. Moore's Motion for Summary Judgment, ECF No. 56, will be DENIED. Defendants' Motion to Strike, ECF No. 46, will also be DENIED. A separate Order shall issue.

Date: January 7, 2020

THEODORE D. CHUANG
United States District Judge